IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DeVANTIA DAVIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:22-cv-00572 ) Judge Trauger |
| DAVIDSON COUNTY SHERIFF'S OFFICE, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

DeVantia Davis, a state inmate in the custody of the Davidson County Sheriff's Office in Nashville, Tennessee, has filed a pro se Complaint for violation of civil rights under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

The case is before the court for ruling on the plaintiff's IFP application and initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## I. APPLICATION TO PROCEED IFP

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). 28 U.S.C. § 1915(a). Because it appears from the plaintiff's submission that he lacks sufficient financial resources from which to pay the full filing fee in advance, his application to proceed IFP in this matter (Doc. No. 2) is **GRANTED** and a $350 filing fee[1] is **ASSESSED**.

---

[1] Prisoners who are not granted pauper status must pay a total fee of $402—a civil filing fee of $350 plus a civil administrative fee of $52—while prisoners who are granted pauper status are only liable for the $350 civil filing fee. *See* 28 U.S.C. § 1914(a)–(b) and attached District Court Miscellaneous Fee Schedule, provision 14 (eff. Dec. 1, 2020).

The warden of the facility in which the plaintiff is currently housed, as custodian of the plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this order to the warden of the facility in which the plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to his new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

The court must conduct an initial review and dismiss the Complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e. To determine whether the Complaint states a plausible claim, the court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual

allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The plaintiff sues under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012).

**B. Plaintiff's Allegations**

For purposes of initial review, the court will construe the allegations in the plaintiff's subsequently filed notice of "Civil Rights violation/retaliation" (Doc. No. 4) together with the allegations of his Complaint.

The plaintiff alleges that he received two write-ups charging him with disciplinary infractions in violation of his First and Fourteenth Amendment rights. The first write-up was issued by Officer Chazsity Rooks after she heard the plaintiff and other inmates "discussing writing grievances on her." (Doc. No. 1 at 4.) The plaintiff claims that this allegedly "bogus" write-up was retaliatory, "because of some grievances [the plaintiff] submitted on [Rooks]." (Doc. No. 4 at 1.) The "sanction rationale" provided in this write-up was that the plaintiff "was disruptive by involving [him]self in a conversation [he] was not called to." (*Id.*; *see* Doc. No. 1 at 4.) The plaintiff was found guilty of this charge two days later at a hearing before defendant Anita Thorns, a Disciplinary Board member. (Doc. No. 1 at 4–5.)

3

In the second write-up, Officer Johnson (who is not named as a defendant) gave a sanction rationale "that [the plaintiff] was sent to restrictive housing for voicing [his] opinion." (Doc. No. 4 at 2; *see* Doc. No. 1 at 5.)

Claiming violations of his constitutional rights to due process and freedom of speech and expression, the plaintiff seeks an award of monetary damages. (Doc. No. 4 at 2; Doc. No. 1 at 5.)

**C. Analysis**

The plaintiff claims that both disciplinary write-ups issued to him were violative of his First Amendment right to freedom of speech. While an inmate "retain[s], in a general sense, a right to criticize prison officials," "[h]e must also establish that he exercised that right in a manner consistent with his status as a prisoner" if his speech is to be protected. *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004). "Prison officials may legitimately punish inmates who verbally confront institutional authority without running afoul of the First Amendment," particularly where such verbal confrontation occurs in the presence of other inmates. *Id.* (citing *Goff v. Dailey*, 991 F.2d 1437, 1439 (8th Cir. 1993)).

Here, the plaintiff was allegedly written up by Rooks after she found him with a group of other inmates "discussing writing grievances on her." (Doc. No. 1 at 4.) No further detail about the substance of the plaintiff's speech is provided. As to the second alleged write-up, for the plaintiff "expressing [his] opinion" (*id.* at 5), that write-up is alleged to have been issued by a non-defendant, Officer Johnson. Like the first incident, the plaintiff's speech to Officer Johnson is not described in any detail. Accordingly, the court cannot find that the claimed violations of the plaintiff's rights to freedom of speech and expression are sufficiently factually supported to survive initial screening. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*,

4

556 U.S. 662, 678 (2009)) (finding that, to survive screening, complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face").

With respect to the allegedly retaliatory write-up by Defendant Rooks, to plausibly claim retaliation under the First Amendment, the plaintiff must allege "that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Id.* at 472 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)). The plaintiff alleges that Rooks issued him a retaliatory write-up for disruptive behavior after she heard the plaintiff and other inmates "discussing writing grievances on her" (Doc. No. 1 at 4), and after the plaintiff had previously submitted grievances against her. (Doc. No. 4 at 1.) He also alleges that he was subsequently convicted of this disciplinary charge and "received sanctions." (Doc. No. 1 at 4–5.)

An inmate's formal grievance filing is protected conduct, *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996), as is an inmate's clear expression of his "intention to resort to official channels to seek a remedy" against a prison official. *Horn v. Hunt*, No. 2:15-cv-220, 2015 WL 5873290, at *5–6 (S.D. Ohio Oct. 8, 2015) (quoting *Carter v. Dolce*, 647 F. Supp. 2d 826, 834 (E.D. Mich. 2009)) ("[C]ourts have recognized that an inmate's exercise of First Amendment rights is not limited solely to filing grievances or accessing the courts," but includes clearly expressed intent or threat to pursue a formal remedy). Liberally construing the Complaint in the plaintiff's favor, the court finds, for purposes of initial review, that the plaintiff's allegations, though sparse, sufficiently establish that his disciplinary write-up by Rooks was motivated by prior grievance filings and/or his expressed intention to again file a grievance against her.

5

Case 3:22-cv-00572   Document 6   Filed 12/15/22   Page 5 of 8 PageID #: 37

However, the plaintiff fails to allege facts from which the court can infer that he suffered an "adverse action" capable of deterring future grievance filing. Notably, the allegation that he was eventually transferred to "restrictive housing" (Doc. No. 4 at 2) is not, without additional factual detail, sufficient to establish more than the type of cell reassignment that "is an act inherent to incarceration and one that falls squarely within the scope of *de minimis* actions that do not support [the adverse action requirement of] a retaliation claim." *Lee v. Wilson Cty. Jail-Lebanon*, No. 3:15-0007, 2016 WL 2866197, at *4 (M.D. Tenn. May 16, 2016), *report and recommendation adopted*, 2016 WL 3137721 (M.D. Tenn. June 6, 2016), *aff'd*, No. 16-5981, 2017 WL 2819220 (6th Cir. Mar. 31, 2017). Plaintiff thus fails to state a colorable claim of First Amendment retaliation.

Nor does the plaintiff state a plausible constitutional claim against Disciplinary Board member Anita Thorns, who is merely alleged to have "found [him] guilty [of] disruptive behavior." (Doc. No. 1 at 4.) "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). An inmate's due process rights in connection with a disciplinary hearing are satisfied, therefore, when he receives "notice of the charges, an opportunity to present evidence, and a written decision explaining the finding of guilt." *Tate v. Quintana*, No. 18-6179, 2019 WL 5866596, at *1 (6th Cir. May 22, 2019) (citing *Wolff*, 418 U.S. at 563–66). Here, the plaintiff does not allege that he was deprived of these due process hallmarks, nor does he allege sufficient facts from which the court could reasonably infer that Defendant Thorns is liable for violating his First Amendment rights.

Finally, although the caption of the Complaint lists the Davidson County Sheriff's Office as a defendant, county sheriff's offices are not proper defendants under Section 1983. *See*

6

*Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2–3 (M.D. Tenn. Aug. 25, 2010) (noting that "since *Matthews*, federal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit"). Moreover, the Complaint does not allege that the plaintiff's harm was caused by any policy of Davidson County itself, as would be required to hold it (or any county employees in their official capacity) liable under Section 1983. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010); *Matthews*, 35 F.3d at 1049.

In sum, the Complaint fails to state any viable claim as currently constituted. However, the court in the interest of justice will grant the plaintiff leave to amend so that he may provide additional factual allegations in support of his claim against Defendant Rooks if he so desires. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (holding "that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA").

### III. CONCLUSION

In light of the foregoing, the plaintiff's IFP application (Doc. No. 2) is **GRANTED**, and the $350 filing fee is **ASSESSED** as described above.

While the Complaint is subject to dismissal for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A, and 42 U.S.C. § 1997e(e), the court will allow the plaintiff the opportunity to file an Amended Complaint within **30 DAYS** of the entry of this order. The Clerk is **DIRECTED** to provide the plaintiff with a form for filing a civil rights complaint (Pro Se Form 14). The plaintiff is cautioned that failure to file an Amended

Complaint within 30 days or to seek an extension of this deadline before it expires will result in dismissal of this action.

The plaintiff's recent letter to the Clerk, docketed as a "Motion for Order to Produce Copies of Grievances" (Doc. No. 5) and so construed, is **DENIED WITHOUT PREJUDICE** to renewal in the event that an Amended Complaint sufficient to survive initial review is filed.

It is so **ORDERED**.

Aleta A. Trauger
United States District Judge